# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| In re: | § |
| | § Chapter 11 |
| DULCES ARBOR, S. DE R.L. DE C.V., | § |
| | § Case No. 11-31199 (lmc) |
| Debtor. | § |

**MAPLE COMMERCIAL FINANCE CORP.'S PRELIMINARY OBJECTION TO DEBTOR'S APPLICATION FOR APPROVAL OF POST-PETITION FINANCING ON A SENIOR-LIEN SECURED BASIS**

TO THE HONORABLE LEIF M. CLARK,
UNITED STATES BANKRUPTCY JUDGE:

Maple Commercial Finance Corp., ("**Maple**"), files this Preliminary Objection ("**Preliminary Objection**") to Debtor's Application for Approval of Post-Petition Financing on a Senior Lien Secured Basis ("**Financing Application**"), and in support of the Preliminary Objection respectively shows as follows:

## I.
## PRELIMINARY STATEMENTS

1. Maple is the holder of a promissory note in the original principal amount of $3,842,864.00 ("**Mortgage Note**") executed by Dulces Arbor, S. de R.L. de C.V. ("**Debtor**") as maker. The Mortgage Note matured in July 2010. As of the commencement of this bankruptcy case ("**Bankruptcy Case**"), the Debtor owed at least $2.7 million in past due and unpaid obligations under the Mortgage Note.

2. The Debtor's obligations under the Mortgage Note are secured under Mexican law by, among other things, a first priority security interest in the Debtor's real property (and improvements thereon) in Juarez, Mexico ("**Property**"), and a first priority security interest in rents due to the Debtor for its lease of the Property. The Debtor's proposed post-petition

"lenders" pursuant to the Financing Application ("**Ducorskys**")[1] are insiders that control the Debtor and all of them except for Mark Ducorsky are also personal guarantors of the Debtor's obligations to Maple under the Mortgage Note.

3. Maple also holds a second priority security interest in the Property pursuant to a guaranty pledge executed by the Debtor to secure a promissory note of the Debtor's affiliate dated May 17, 2005 in the original principal amount of $5,000,000.00 ("**Simply Goodies Note**"). No payments have ever been made to Maple under the Simply Goodies Note, which matured in June 2008 and remains in default. As of the commencement of this Bankruptcy Case, the total amount owed to Maple under the Simply Goodies Note was over $9 million.

4. The Debtor and the Ducorskys have, together, been continuously engaged in litigation relating to the Property since at least early 2009.[2] The Financing Application seeks to have the Ducorskys advance additional funds – in unspecified amounts and percentages, with unspecified interest, and over an unspecified period of time – in order to fund additional litigation against unspecified defendants which the Debtor alleges "should" ultimately result in a return for creditors. The Debtor has no income, no operations, and no business other than owning the Property and hoping to collect rent thereon.

5. The Financing Application fails to satisfy numerous requirements set forth in section 364 of the Bankruptcy Code. The Debtor's mere conclusion that it is unable to obtain credit in a manner outside the parameters set forth in the Financing Application is wholly

---

[1] As used herein, "Ducorskys" means Raymond Ducorsky, Mark Ducorsky, Brad Ducorsky and Blueberry Sales LLP ("**Blueberry Sales**"). Blueberry Sales is controlled by one or more of Raymond, Mark and/or Brad Ducorsky. Raymond Ducorsky's wife, Norma Ducorsky, is also scheduled as a secured creditor of the Debtor and has been involved in extensive litigation in an attempt to cancel Maple's second beneficiary interest in the Property.
[2] *See* Addendum to Debtor's Schedule B [Dkt. No. 15].

insufficient.[3] Rather, the Debtor must set forth competent evidence illustrating its good faith efforts to obtain credit which would not result in the extraordinary priming relief requested in the Financing Application. Further, the Financing Application does not even attempt to set forth appropriate adequate protection of Maple as required by the Bankruptcy Code, and does not compensate Maple for the additional risk Maple is being asked to undertake. The terms of the proposed debtor-in-possession financing are blatantly vague and would allow the Debtor's insiders to control the Debtor's expenditure of funds indefinitely – all for the purpose of bringing litigation from which the insiders themselves would stand to benefit. The Financing Application is not in the best interests of the Debtor's estate or its creditors and should be denied.

## II.
## FACTUAL BACKGROUND

A. **The Debtor's obligations to Maple under the Mortgage Note and the Simply Goodies Note**

6. On or about July 10, 2005 the Debtor, as borrower, executed the Mortgage Note and certain other related loan documents (including that certain Loan Agreement dated July 10, 2005) in favor of Bank of the West, as lender. The Debtor's obligations under the Loan Agreement and the Mortgage Note are secured, among other things, by (i) a first priority lien position in the Property under the *Contrato de Fideicomiso Irrevocable de Garantía* dated April 29, 1995, Public Deed No. 16,995, granted before Alejandro Victor Gonzalez Bernal, Notary Public No. 19, of Ciudad Juarez, Chihuahua, Mexico ("**Mexican Trust Agreement**"), (ii) a pledge and assignment of rents due to the Debtor for its lease of the Property ("**Assignment of Rents**"), and (iii) absolute guaranty agreements ("**Guaranty Agreements**") executed by

---

[3] In fact, the Debtor's alleged inability to obtain unsecured financing belies the fact that, as noted in the Debtor's bankruptcy schedules, Brad Ducorsky, Mark Ducorsky and Raymond Ducorsky have previously provided **unsecured** "loans to the corporation," allegedly totaling an estimated $816,950. Now that the Debtor is in bankruptcy, however, these same insiders seek to take a priming position that they clearly could not take – yet were apparently willing to lend without taking – outside of bankruptcy. *See* Debtor's Schedule F [Dkt. No. 15].

Raymond Ducorsky, Brad Ducorsky, Blueberry Sales and other Ducorsky-related entities for all amounts of principal and interest due under the Mortgage Note. The Mortgage Note matured by its terms and became due and payable in full on July 10, 2010, and remains in default.

7. As of January 18, 2011, Bank of the West assigned to Maple all of its rights, title, and interests in the various loan documents relating to the Mortgage Note, including the Loan Agreement, the Mexican Trust Agreement, the Assignment of Rents and the various Guaranty Agreements (collectively, "**Loan Documents**"), which assignment was properly noticed to the Debtor, the Ducorskys and other affiliated entities. As of the commencement of this Bankruptcy Case, the Debtor owed Maple approximately $2.7 million under the Mortgage Note.

8. On or about May 17, 2007, Simply Goodies, LLP ("**Simply Goodies**") – an entity created in 2007 in connection with, and as contemplated by, various loan documents entered into by and between Maple, the Ducorskys and various entity affiliates of the Ducorskys – executed the Simply Goodies Note in favor of Maple. The Simply Goodies Note is secured by, among other things, a pledge by the Debtor of all of the Debtor's rights and interests as second beneficiary in the Property and settlor under the Mexican Trust Agreement. Thus, Maple holds both first and second beneficiary positions in the Property under the Mexican Trust Agreement. No payments were ever made to Maple on account of the Simply Goodies Note, which matured by its terms on June 30, 2008 and remains outstanding and due in full. As of the commencement of the Bankruptcy Case, Maple was owed in excess of $9 million under the Simply Goodies Note.[4]

---

[4] Due to the voluminous nature of the various loan and security documents between the parties, copies of such documents are not attached to this Preliminary Objection. However, such documents will be made available upon request of any party-in-interest and, if necessary, will be made available at any hearing on the Financing Application.

B. **The Debtor's and the Ducorskys' concealed attempts to sell the Property, and the ensuing El Paso Litigation**

9. Beginning in or around April 2008 and continuing through the end of 2008, the Debtor and the Ducorskys attempted to negotiate a proposed sale of the Property to certain Mexican investors – all without proper notification to Maple of the sale or potential effects on Maple's security interests in the Property or the rental proceeds from the Property. Upon information and belief, given the heavy debt burden that encumbered the Property, the Debtor and the Ducorskys concocted an elaborate scheme by which they intended to avoid their debt obligations to Maple.[5] The Debtor's and the Ducorsky's scheme included, among other things:

- disguising a portion of the Property sale price as a purchase of certain "assets" from an entity created by the Ducorskys for purposes of consummating the sale, Casa Brokers, LLC ("**Casa Brokers**");

- funneling another portion the Property sale price through Casa Brokers as a "consulting fee";

- having the proposed purchasers of the Property enter into a Confidentiality and Non-Circumvention Agreement that specifically prevented the purchasers from having any contact with Maple or Bank of the West;

- initiating multiple lawsuits in Mexico designed to create fictitious liens on the Property; and

- threatening the proposed purchasers with "scorched earth" litigation if they refused to follow the Ducorskys' plan.

10. The proposed purchasers refused to purchase the Property. As promised, the Debtor and the Ducorskys initiated litigation against the proposed purchasers in El Paso county court (Cause No. 2009-765, *Casa Brokers, LLC, Dulces Arbor, S. de R.L. de C.V. and Blueberry Sales, LLP v. Elamex S.A. de C.V., et al.*, in the County Court at Law of El Paso County, Texas, County Civil Court No. 3) ("**El Paso Litigation**") in February 2009. The details of the Debtor's

---

[5] At the time of the proposed sale, the obligations owed to Maple and secured by Maple's second beneficiary interest in the Property were those obligations under the Simply Goodies Note. Maple had not yet acquired the Mortgage Note or related Loan Documents from Bank of the West.

and Ducorskys' scheme and the documents evidencing this scheme are more fully set forth in the Motion to Dismiss for *Forum Non Conveniens* filed in the El Paso Litigation by Defendants Elamex S.A. de C.V. and Mount Franklin Foods LLC on February 9, 2010 ("**Forum Non Conveniens Motion**"). A true and correct copy of the Forum Non Conveniens Motion and the Affidavit of Robert J. Whetten filed in support of the Forum Non Conveniens Motion is attached hereto as **Exhibit A**.[6]

11. Maple subsequently learned of the El Paso Litigation and, in July 2009, filed a Petition in Intervention to protect its interests in the Property. Maple has also since asserted various claims in the El Paso Litigation against the Debtor and the Ducorskys, including claims for breach of contract as to the Mortgage Note, the Simply Goodies Note, the Assignment of Rents, and the various Guaranty Agreements, as well as claims for fraud, tortious interference, and civil conspiracy relating to the Debtor's and the Ducorsky's fraudulent scheme to conceal the sale of the Property from Maple.

12. In March 2011, Maple filed various summary judgment motions in the El Paso Litigation, including motions for summary judgment as to the Debtor for breach of the Mortgage Note, and as to each of Blueberry Sales, Brad and Raymond Ducorsky for breach of their respective Guaranty Agreements in connection with the Mortgage Note. Maple's various summary judgment motions were pending as of the commencement of this Bankruptcy Case.

C. **Foreclosure proceedings in Mexico and the Debtor's last-minute attempt to forestall Maple's sale of the Property**

13. In May 2011, Maple initiated foreclosure proceedings in Mexico as to both its first beneficiary interest under the Mexican Trust Agreement and its pledge rights in the second

---

[6] Due to their voluminous nature, Exhibit A hereto does not include all exhibits to the Forum Non Conveniens Motion. All of such exhibits will be made available upon request of any party-in-interest and, if necessary, will be made available at any hearing on the Financing Application.

beneficiary interest under the Mexican Trust Agreement. Pursuant to the nonjudicial foreclosure proceedings prescribed under the Mexican Trust Agreement, the Mexican trustee held an initial auction on June 8, 2011 at which there were no bidders for the Property. In accordance with the Mexican Trust Agreement, the Property had been scheduled for a second public auction (with a reduced minimum bid) to occur on June 23, 2011.

14. The Debtor initiated this Bankruptcy Case on June 22, 2011 ("**Petition Date**"), on the eve of the scheduled sale of the Property.

15. The Debtor filed the Financing Application on July 22, 2011. Pursuant to the Financing Application, the Debtor admits that it has no income and proposes to have the Ducorskys lend an unspecified amount to be secured on a senior lien basis by rent and past due rent from the Debtor's lease of the Property. Financing Application, ¶¶ 5-8. The stated purpose of the proposed financing is to fund litigation by the Debtor against unspecified defendants to collect past due rent and for alleged patent infringement relating to equipment located on the Property, as well as to pay for administrative expenses of the estate. Financing Application, ¶ 5. The Debtor has not collected rent on the Property for over three years. Financing Application, ¶ 9. Pursuant to the Assignment of Rents, Maple has a first priority lien on the rents from the Property.

16. Since the Petition Date, the Debtor and the Ducorskys have already made the Debtor's intentions clear: to continue their ongoing litigation tactics and to avoid having to honor their payment and guaranty obligations to Maple, while at the same time preventing Maple from asserting its rights to foreclose on its interests in the Property. The Financing Application does not meet the requirements of the Bankruptcy Code, is not in the best interests of the estate and should not be approved.

## III.
## OBJECTION

17. Although the Debtor does not specify the provisions under which it seeks relief in the Financing Application, section 364 of the Bankruptcy Code governs whether a debtor-in-possession is authorized to obtain credit on post-petition basis.

18. Granting a priming lien (such as the senior lien proposed by the Debtor to be granted to the Ducorskys) pursuant to Bankruptcy Code section 364(d) is an extraordinary remedy and is only appropriate where credit cannot be obtained on any other bases. *See* 3 COLLIER ON BANKRUPTCY ¶ 364.05 (15th ed. Rev. 2008). Specifically, where a debtor seeks to incur debt on a "superpriority" basis that primes existing prepetition liens, section 364(d) requires the debtor to (a) have attempted, unsuccessfully, to obtain alternative financing on better terms, and (b) show that the interests of prepetition lienholders are adequately protected. *See* 11 U.S.C. § 364(d). The Debtor bears the burden of proof on the issue of adequate protection to the primed lienholder. *Id.* at (d)(2).

19. In addition, courts have also generally considered certain factors in determining whether a proposed debtor-in-possession financing should be approved, including whether (1) the proposed financing is an exercise of sound and reasonable business judgment; (2) no alternative financing is available on any other basis; (3) the financing is in the best interests of the estate and its creditors; (4) no better offers, bids, or timely proposals are before the Court (5) the financing is necessary to preserve assets of the estate, and (6) the financing is otherwise fair and reasonable. *See In re Premier Entm't Biloxi LLC*, No. 06-50975, 2007 Bankr. LEXIS 3939, at *6-*7 (Bankr. S.D. Miss. 2007) (citing *In re Western Pacific Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997); *In re Crouse Group, Inc.*, 71 B.R. at 546; *In re Phase-I*

*Molecular Toxicology Inc.*, 285 B.R. 494, 495-96 (Bankr. D.N.M. 2002); *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005)).

20.     As discussed more fully below, the Debtor has failed to even allege, much less show that (a) the proposed DIP financing complies with section 364 of the Bankruptcy Code, (b) it is necessary and appropriate, (c) the financing is in the best interests of the estate and its creditors, (d) the terms of the transaction are fair and reasonable, and (e) the proposed financing provides adequate protection to Maple.  Because the Debtor cannot carry its burden in demonstrating that the proposed financing is appropriate, the Financing Application should not be approved.

A.     **The Debtor has not demonstrated its inability to obtain credit outside the parameters set forth in the Financing Application**

21.     Section 364(d)(1)(A) provides that a debtor may only obtain secured credit that primes the security interest of a prepetition creditor where the debtor was "unable to obtain such credit otherwise."  11 U.S.C. § 364(d)(1)(A).  The debtor bears the burden of proof in demonstrating that it was unable to obtain alternate financing, and the debtor must make a showing of reasonable effort.  *See In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010).

22.     Not surprisingly, the Debtor has sought DIP financing from its various insiders, including insiders that directly control the Debtor.  The Debtor alleges in its Financing Application that the Ducorskys "insist on having senior secured claims for the sums they loan to the Debtor."  Financing Application, ¶ 5.  However, the Debtor has failed to demonstrate that it could not obtain – or even made a reasonable effort to obtain – unsecured credit or secured credit subject to Maple's existing senior prepetition liens.  The Financing Application does not comply with section 364(d)(1)(A) of the Bankruptcy Code and should not be approved.

B.  **<u>The Debtor has failed to show that Maple is adequately protected.</u>**

23. In addition to requiring that the debtor demonstrate its inability to obtain financing on an alternate basis, section 364(d) requires that the interest of the lienholder whose lien the debtor proposes to prime is adequately protected. 11 U.S.C. § 364(d)(1)(B).

24. The Bankruptcy Code does not define the term "adequate protection."[7] However, as the Third Circuit has recognized

> [T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy. Accordingly, a proposal depending upon a pre-petition lender having adequate protection, no matter its form, should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights. Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value caused by the superpriority given to the post-petition loan. In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.

*Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16, F.3d 552, 564 (3rd Cir. 1994) (citations and internal quotations omitted). *See also In re First South Sav. Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987) ("Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected.").

25. The Financing Application does not even attempt to address the issue of adequate protection for Maple's security interest in the rents from the Property. Instead, the Debtor makes the unsupported assertion that "Dulces Arbor *believes* Maple may not be properly secured under

---

[7] Bankruptcy Code section 361 lists three examples of how a debtor *may* provide adequate protection: (i) requiring the debtor to make a cash payment, (ii) providing additional or replacement liens, or (iii) granting such other relief that would provide the indubitable equivalent of the lienholder's interest in the property. *See* 11 U.S.C. § 361; *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987). However, none of these options are applicable here as the Debtor has alleged that Maple's interests are already adequately protected.

applicable Mexican law," and generally states that "[t]he litigation to be brought by Dulces Arbor *should* be beneficial for this estate and its creditors alike, including Maple." Financing Application, ¶¶ 11 and 13 (emphasis added).

26. Maple objects to the priming of its first priority lien in the rents from the Property because, among other things, the terms proposed in the Financing Application force Maple to assume even greater risks of nonpayment – especially, as here, where the proposed DIP lenders are insiders of the Debtor in default on their own obligations to Maple – without compensating Maple for such additional risk. The Financing Application falls woefully short of establishing adequate protection for Maple's priority lien in the rents from Property. As such, the Financing Application should be denied.

C. **The terms of the DIP financing are unreasonable and are not in the best interests of the Debtor's estate.**

27. The Financing Application does not specify any terms of the proposed DIP financing, the amount to be loaned, the proposed duration of such loans, the proposed rate of interest to be paid, the proposed budget for the Debtor's use of the loan proceeds, the details of the litigation the Debtor proposes to finance (including the entities to be sued), or any other parameters of the loan(s). Instead, the Debtor merely states that "[t]he percentages in which [the Ducorskys] will lend have not been worked out yet, but will be, as the funds to be loaned are needed." Financing Application, ¶ 7.

28. It is unreasonable to attempt to bind the Debtor's estate and its creditors to loan terms that are uncertain and unspecified. Approval of the Financing Application would allow the Debtor to borrow from its controlling insiders with absolutely no restrictions or limitations. As courts have recognized, transactions between a debtor and its insiders are subject to greater scrutiny than "arms length" transactions. *In re C.E.N., Inc.*, 86 B.R. 303, 307; *Pepper v. Litton*,

308 U.S. 295, 306 (1939). The proposed financing is uncertain, is proposed for speculative purposes, and offers no reasonable or foreseeable hope of benefitting the Debtor's estate or its creditors. The Debtor and its insiders should not be allowed to waste estate assets in such a manner, and the Financing Application should not be approved.

29. For all of the foregoing reasons, Maple respectfully submits that the Debtor has not demonstrated its entitlement to enter into postpetition financing pursuant to the Financing Application; accordingly, the Financing Application should be denied.

## IV.
## RESERVATION OF RIGHTS

30. Maple's discovery and analysis are ongoing, and Maple therefore reserves the right to amend or supplement this Preliminary Objection to assert additional objections to the Financing Application.

WHEREFORE, PREMISES CONSIDERED, Maple respectfully requests that the Court enter an Order (i) sustaining this Preliminary Objection, (ii) denying the Financing Application, and (iii) granting such other and further relief to which Maple may be entitled both at law and in equity.

Dated: August 12, 2011.　　　　　　　　　　　Respectfully submitted,

**FULBRIGHT & JAWORSKI, L.L.P.**

*/s/ Anna Maria Mendez*
Mark A. Platt
Texas State Bar No. 00791453
Jack M. Partain, Jr.
Texas State Bar No. 15548500
Anna Maria Mendez
Texas State Bar No. 24055960
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: mplatt@fulbright.com
Email: jpartain@fulbright.com
Email: amendez@fulbright.com

E. Lee Haag
Texas State Bar No. 08657700
Chris Watt
Texas State Bar No. 24033314
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: lhaag@fulbright.com
Email: cwatt@fulbright.com

**COUNSEL FOR MAPLE COMMERCIAL FINANCE CORP.**

## CERTIFICATE OF SERVICE

　　I certify that, on the 12th day of August, 2011, I electronically filed the foregoing Preliminary Objection via the CM/ECF system and a true and correct copy of the foregoing was served upon the counsel and entities on the attached Service List via the CM/ECF electronic noticing system and/or First Class United States Mail.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Anna Maria Mendez*

<u>**SERVICE LIST – CASE NO. 11-31199**</u>

DULCES ARBOR, S. DE R.L. DE C.V.
114 CALLE CORRALES
EL PASO, TX 79912

E.P. BUD KIRK
TERRACE GARDENS
600 SUNLAND PARK DRIVE, BLDG. 4, #400
EL PASO, TEXAS 79912

OFFICE OF THE UNITED STATES TRUSTEE
615 E. HOUSTON STREET, SUITE 553
SAN ANTONIO, TEXAS 78205

ACCOUNTS RECEIVABLES UPS
55 GLENLAKE PARKWAY
ATLANTA, GA 30328

ALEJANDRO FRANCO
1313 JOHN RING, LN
EL PASO TX 79936

ALEX BONNETT
EL PASO LANGUAGE SERVICES
3700 HUECO VALLEY DR., #4103
EL PASO TX 79938

BERNARD R. GIVEN
FRANDZEL ROBINS BLOOM & CSATO LC
6500 WILSHIRE BLVD., 17TH FL
LOS ANGELES CA 90048

BLUEBERRY SALES LLP
2711 CENTERVILLE RD, STE 400
WILMINGTON DE 19809

BRAD DUCORSKY
5706 MIRA SIERRA LANE
EL PASO TX 79912

CITIBANK NA
100 CITIBANK DR
SAN ANTONIO TX 78425

ERICA MATTHEWS
BBVA COMPASS BANK
AL BI SC RCH
P O BOX 10566
BIRMINGHAM AL 35296

GRUPO NACIONAL PROVINCIAL
RANSOM BECKER INSRUANCE AGENCY
6428 CALLE VISTA CITY
EL PASO TX 79912

JP MORGN CHASE
NATIONAL SUBPOENA PROCESSING
MAIL CODE IN1-4054
7610 WEST WASHINGTON ST
INDIANAPOLIS 46231

MARCO CANALES
VARGAW AND CANALES, SC
201 CORTEZ DR, STE 613
EL PASO  TX 79905

MARK DUCORSKY
114 CALLE CORRALLES
EL PASO TX 79912

RAYMOND DURCOSKY
114 CALLE CORRALES
EL PASO TX 79912

ROBERTO CALVO
CALVO & ASSOCIATES
P O BOX 3721
EL PASO, TX 79923

ROBERTO RENTERIA
4040 BOY SCOUT LANE
EL PASO TX 79922

SCOTTHULSE PC
1100 CHASE TOWER
201 EAST MAIN DRIVE
EL PASO TX 79901