# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>DULCES ARBOR, S. de R.L. de C.V, )<br>) <br>Debtor, )<br>) | Case No. 11-31199-LMC-11 |
| DULCES ARBOR, S. de R.L. de C.V, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELAMEX USA, CORP., )<br>ELAMEX S.A. de C.V., )<br>MOUNT FRANKLIN FOODS, LLC, )<br>CASAS GRANDES CONFECTIONS, LLC, )<br>ACCEL S.A de C.V., and )<br>DULCES BLUEBERRY S.A. de C.V. )<br>)<br>Defendants. ) | Adversary. No. _____ |

## COMPLAINT FOR TURNOVER, PATENT INFRINGEMENT, AND TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

To the Honorable Leif M. Clark, United States Bankruptcy Judge:

Comes now Debtor/Plaintiff Dulces Arbor S. de R.L. de C.V. (hereinafter "Debtor/Plaintiff"), and files this Complaint for Turnover pursuant to 11 U.S.C. § 542, action for Patent Infringement pursuant to 35 US.C. § 271 and tortious interference with contractual relationships, against Defendants Elamex USA, Corp., Elamex, S.A. de C.V., Mount Franklin Foods, LLC, Casas Grandes Confections, LLC, Accel S.A. de C.V. and Dulces Blueberry S.A. de C.V., and would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1. On June 22, 2011, Debtor/Plaintiff filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code with this Court under Case No. 11-31199-LMC-11.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. Because Defendants are infringing on a patent owned by Debtor/Plaintiff, and because Defendants owe Debtor/Plaintiff remuneration for the use, occupancy and or control of real property that Debtor/Plaintiff is the Lessor of, such claims are property of this Bankruptcy Estate and the turnover remedy here sought arises under title 11.

3. This proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O) in which this Court is authorized and empowered to enter appropriate Orders and Judgments. This proceeding is an adversary proceeding pursuant to Fed. R. Bank. P. 7001(1).

## PARTIES AND SERVICE

4. Debtor/Plaintiff is a corporation organized under the laws of the Republic of Mexico. Debtor/Plaintiff has assets in the United States, in this District.

5. Elamex USA, Corp. ("Elamex USA") is a corporation organized under the laws of Delaware, which does business in Texas but does not maintain a regular place of business in Texas, and has a statutory agent for service of process. As such, service of process can be served upon Elamex USA by serving its statutory agent for service of process, Capitol Services, Inc., 1675 South State Street, Suite B, Dover, Delaware 19901 via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3).

6. Elamex S.A. de C.V. ("Elamex") is a corporation organized under the laws of the Republic of Mexico, which does business in Texas and does not have a designated agent for service of process. As such, service of process can be served upon Elamex by serving its statutory agent for service of process, Secretary of State, State of Texas, Capital Station, Austin,

Texas 78711 via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3), and forwarded to Elamex's office at 1800 Northwestern Dr., El Paso, Texas 79912.

7. Mount Franklin Foods, LLC ("Mt. Franklin") is a Texas limited liability company which may be served with service of process via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3) by serving its registered agent, Capital Corporate Services, at 800 Brazos, Ste. 400, Austin, Texas 78701.

8. Casas Grandes Confections, LLC ("Casas Grandes") is a Nevada limited liability company which does business in Texas but does not maintain a regular place of business in Texas, and has a statutory agent for service of process. As such, service of process can be served upon Casas Grandes by serving its statutory agent for service of process, National Registered Agents, Inc. of NV, 1000 East William Street Suite 204, Carson City, Nevada, 89701 via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3).

9. Accel S.A. de C.V. ("Accel") is a corporation organized under the laws of the Republic of Mexico which does business in Texas and does not have a designated agent for service of process. As such, service of process can be served via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3) to its Chief Executive Officer, its *"Consejero Delegado"*, Mr. Eloy S. Vallina Garza at his home located at 924 Cherry Hill Lane, El Paso, Texas 79912.

10. Dulces Blueberry S.A. de C.V. ("Dulces Blueberry" or "Lessee") is a corporation organized under the laws of the Republic of Mexico which does business in Texas, and does not have a designated agent for service of process. As such, service of process can be served via First Class U.S. Mail under Fed. R. Bank. P. 7004(b)(3) to its Sole Administrator and General Manager, its *"Administrador Unico y Gerente General"*, Mr. Lawrence Ray Price at 12058 Ruby Gate Way, El Paso, Texas 79936.

**FACTUAL BACKGROUND**

11. Debtor/Plaintiff is the lessor of an approximate 330,000 square foot building (the "Property") in Heroica Ciudad Juarez, Mexico. The lender on the note/mortgage for the Property was Bank of the West of El Paso, Texas.

12. Since at least 1988, the Property has been utilized as a candy manufacturing facility. Debtor/Plaintiff was previously the candy-manufacturing maquila for El Paso based Blueberry Sales, LLP ("Blueberry Sales").

13. In approximately 2001, Elamex, Elamex USA and Mount Franklin, or their predecessor entities, came into the candy business. From that point forward, those Elamex entities were bitter competitors of Blueberry Sales in the candy business.

14. In 2007, Blueberry Sales of El Paso contributed certain assets which included all the shares in Dulces Blueberry (the current Lessee) along with the assets of Chicago based Sweet Ventures, Inc. to jointly create El Paso based Simply Goodies, LLP ("Simply Goodies"). Simply Goodies manufactured, marketed and distributed candy. Upon the creation of Simply Goodies, ownership of Dulces Blueberry passed to Simply Goodies. Dulces Blueberry then became the candy manufacturing arm of Simply Goodies. Simply Goodies candy manufacturing took place in the Property, and such manufacturing services were provided by Dulces Blueberry. As part of the creation of Simply Goodies, Debtor/Plaintiff entered into a lease with Dulces Blueberry (the "Lease") with Simply Goodies of El Paso guaranteeing the Lease.

15. In 2008, Simply Goodies was failing. Its principal lenders, Bridge Healthcare Finance and Bridge Opportunity Finance ("Bridge") held a private U.C.C. sale after locating a likely buyer through Elamex. By the end of 2008, Defendant Elamex, with funds loaned by Elamex, through its related entities Casas Grandes and Sunrise Candy, LLC, had purchased the

4

assets of Simply Goodies, including a power of appointment to designate the next owner of the stock in the Lessee (Defendant Dulces Blueberry), at a U.C.C. foreclosure sale.

16. Also in 2008, Robert J. Whetten ("Whetten") a board member of Defendant Elamex, who also was or is Co-Chief Executive Officer of Defendant Accel (amongst other current or former positions in other entities related to Accel and Elamex), approached Debtor/Plaintiff regarding the possible purchase of the Property. Related to those negotiations, which failed, Defendants separately agreed to reimburse Debtor/Plaintiff $25,000 in attorney's fees.

17. Although not provided for in the fee reimbursement agreements, Elamex demanded a release of "Elamex its affiliates and assigns arising out of the dealings between the parties." in order for Debtor/Plaintiff to realize any fee reimbursement. Debtor/Plaintiff did not agree to the release and hence could not receive the reimbursement it was due.

18. From the point time in late 2008 when control of the Lessee (Defendant Dulces Blueberry) came under the control of at least Elamex as well as certain officers of Elamex, Debtor/Plaintiff has been prevented from receiving any rent or any of the other Lease obligations due Debtor/Plaintiff for the use, occupancy and or control of the Property. All Defendants are responsible for or otherwise involved in causing Debtor/Plaintiff to not receive any of the Lease obligations, due to their conspiracy to prevent the Debtor/Plaintiff from receiving any remuneration for the use, occupancy and or control of the Property.

19. The conspiratorial acts of the Defendants include but are not limited to the following:

    a. Whetten, who is or was a board member of Elamex and is or was Co-Chief Executive Officer of Accel, recommended Hector Delgado of the Bickerstaff, Heath, Delgado, Acosta law firm to represent Debtor/Plaintiff in reference to the potential sale identified in paragraph 16 above. Neither Whetten nor Delgado disclosed the true nature and extent of

representation which Delgado had provided and was providing to the Defendants. During the time that Debtor/Plaintiff was a client of Delgado's and unbeknownst to Debtor/Plaintiff, Delgado was advising and actively assisting Defendants in a manner and in acts directly adverse to Debtor/Plaintiff's interests;

b.  After the Elamex entities purchased of the assets of Simply Goodies, Whetten was the only one that gave the direction to transfer the ownership of Dulces Blueberry (the Lessee) to two "shelf" entities who had no ongoing operations which were provided by Baker & McKenzie (of Mexico). Baker & McKenzie represent Elamex and affiliates;

c.  Simultaneously with the purchase of the Simply Goodies assets, Whetten appointed an individual to be Sole Administrator and attorney-in-fact for Dulces Blueberry. Although this individual was appointed to the aforesaid position and powers, he was only allowed to exercise them when he received instructions to do so from Whetten or from one other specific officer of Elamex;

d.  Over a year and a half after Defendants took control of Simply Goodies' assets and Dulces Blueberry, as well as the Property, the Defendants and Hector Delgado implemented an elaborate offset scheme, using documents with purported retroactive effect in their continuing and now expanding efforts to prevent Debtor/Plaintiff from receiving any remuneration for the continuing use, occupation and control of the Property;

e.  As part of the "offset" scheme, Mount Franklin is paying a rent component due Debtor/Plaintiff to Mount Franklin's affiliate, Confecciones de Juarez, which is 100% owned by Elamex. This rent component never reaches the Debtor/Plaintiff.

f.  Defendants (not including Dulces Blueberry), with and through their attorney Hector Delgado, entered into a retroactive "Joint Defense and Confidentiality Agreement" between themselves and Lessee Dulces Blueberry, even though it was and is very adverse to Debtor/Plaintiff (and others), with an effective date in November 2008 at which time Hector Delgado was still actively representing, giving advice to and billing Debtor/Plaintiff. On information and belief, Delgado and Bickerstaff Heath continue to advise Defendants in relation to the suit styled Dulces Arbor et al v. Elamex et al cause number 2009-765 (the "State Lawsuit").

20.  In January 2009, Debtor/Plaintiff filed suit against Elamex; Elamex USA; Mount Franklin Foods; Casas Grandes Confections and Sunrise Candy, LLC (the "State Lawsuit"). Alternately, and without waiving the foregoing, Defendants now take the position, in the State Lawsuit, that they are essentially one entity comprised of various "alter-egos". To the extent that were proven to be true, Defendants would be jointly liable for their acts which have caused Debtor/Plaintiff to receive no remuneration for the use, occupancy and or control of the Property on an "alter-ego" or similar theory disregarding the corporate form.

6

21. On August 15, 2000, United States Letters Patent No. 6,101,784 entitled "Patent Wrapping Machine" was issued to Raymond Ducorsky and Jason Schoen. It was granted to them for the invention of the Product Wrapping Machine. The equipment utilizing the technology protected by the Product Wrapping Machine Patent has an approximate length of 102 inches, a width of approximately 44 inches, a height of approximately 64 inches and an approximate weight of 1200 pounds. The aforesaid specifications may have been modified by Defendants without the knowledge or approval of the inventors. The Product Wrapping Patent equipment is commonly known as "flow pack" or "flow wrap" machines and has an appearance similar to the below:





22. Debtor/Plaintiff acquired the rights to the Product Wrapping Machine Patent. Debtor/Plaintiff is the owner of all right, title, and interest in the Product Wrapping Machine Patent as well as all inventions and discoveries covered by the Product Wrapping Machine Patent and all divisions, continuations, continuations in part, reissues, reexaminations or extensions thereof, and any other inventions or discoveries related thereto (the "Patent Rights") as well as to technical information, know how, processes, procedures, compositions, devices, methods, formulas, protocols, techniques, software, designs, drawings, or data created by the inventors and Debtor/Plaintiff in relation to the Product Wrapping Machine Patent (the "Technology Rights").

23. The inventors and later Debtor/Plaintiff have owned the Product Wrapping Machine Patent throughout the period of the Defendants' infringing acts. Debtor/Plaintiff owns the Product Wrapping Machine Patent and has full and exclusive rights to bring suit to enforce the Product Wrapping Machine Patent, including the right to recover for past infringement.

24. Defendants have infringed and are still infringing on the Product Wrapping Machine Patent by using the technology protected by the Product Wrapping Machine Patent and the equipment containing the Product Wrapping Machine Patent technology and then, based on information and belief, selling the products utilizing Debtor/Plaintiff's Product Wrapping Machine Patent to regional and national retailers, wholesalers, and re-packagers throughout the United States including possibly, but not limited to, Wal-Mart, Family Dollar, Albertson's, Food Lion and others.

25. In 2007 a Patent Licensing Agreement was granted to Simply Goodies for the use of certain Patent Rights and Technology Rights in inventions and discoveries covered by the Product Wrapping Machine Patent. In addition to other requirements, Simply Goodies was required to permanently and legibly mark all applicable products and documentation manufactured by it under the Patent Licensing Agreement with a patent notice as may be permitted or required by Title 35 of the United States Code. Subsequently, Simply Goodies breached the Patent Licensing Agreement. Simply Goodies was given notice of its breach and failed to respond, and thereby its rights in the Product Wrapping Machine Patent terminated in mid-2008. Simply Goodies was provided written notice of the infringement as required by 35 U.S.C. § 287.

26. Dulces Blueberry and possibly others are manufacturing products using the Product Wrapping Machines. Products produced for and or by Mount Franklin Foods using the Product Wrapping Machines are regularly shipped to Mount Franklin in El Paso, Texas.

27. Mount Franklin is distributing the products produced on the Product Wrapping Machines regularly throughout the United States on an almost daily basis.

28. In addition to the equipment covered by the Product Wrapping Machine Patent, there is other equipment allegedly now owned by Casas Grandes, and the operations and production from that equipment, currently occupy the entirety of the Property.

29. The current monthly rent is approximately $132,776.00 plus applicable taxes. Other Lease obligations such as insurance and taxes are in addition to the monthly rental amount. In rent and interest alone, not including other important Lease obligations, over $5,000,000 is owed to the Debtor/Plaintiff. Each month another $132,776 that rightfully belongs to Debtor/Plaintiff is diverted by the Defendants according to their "offset" scheme.

30. Defendants knew that causing Debtor/Plaintiffs not to receive any payments would eventually force Debtor/Plaintiff to either settle for pennies on the dollar for the monies owed, which has already been attempted on more than one occasion, or would cause Debtor/Plaintiff to resort to seeking bankruptcy protection.

31. As a direct and foreseeable consequence of causing Debtor/Plaintiff to receive no remuneration for the continuing use, occupation and control of the Property, Debtor/Plaintiff was unable to continue to pay Bank of the West, resulting in default and later an auction of the Property (though no sale took place) not to mention the expense of hundreds of thousands of dollars in legal fees paid by Debtor/Plaintiff and its owners.

**COUNT ONE**
**TURNOVER**

32. Debtor/Plaintiff re-alleges paragraphs 1-31 as though fully set forth herein. Defendants through themselves and/or through their control of Defendant Dulces Blueberry effectively have possession, custody, and control over the Property. Such improper control has existed since at least December 2008. Nevertheless, Defendants have caused Debtor Plaintiff to receive no remuneration for the use, occupancy and or control of the Property. Upon the filing

of the Chapter 11 Bankruptcy Proceeding by Debtor/Plaintiff, the monies at issue became and are now property of the Bankruptcy Estate. As such, Defendants must turn over the Property to Debtor/Plaintiff so that the Property, which is now property of the Bankruptcy Estate, can be used, sold, or leased pursuant to 11 U.S.C. § 363.

33. Debtor/Plaintiff hereby requests that Defendants be ordered to turn over the Property as required under 11 U.S.C. § 542 and account for such Property. In the event that Defendants fail or refuse to turnover the Property, Debtor/Plaintiff requests that this Court enter an appropriate Order against Defendants based on such failure and refusal, and enforce that order with all appropriate writs and decrees for monetary damages, punitive damages, and awards of legal expenses and attorney's fees.

## COUNT TWO
## INFRINGEMENT OF THE WRAPPING PATENT

34. Debtor/Plaintiff re-alleges paragraphs 1-31 as though fully set forth herein.

35. The Product Wrapping Machine Patent is valid and enforceable.

36. Upon information and belief, in violation of 35 U.S.C. § 271, Defendants allow and or produce, and or use, and or offer to sell, and/or sell within the United States, and/or import into the United States, products that infringe the Product Wrapping Machine Patent as well as the Patent Rights and Technology Rights related thereto, including but not limited to the wrapping of a variety of candy products that are in a variety of shapes such as the following:



37. Upon information and belief, in violation of 35 U.S.C. § 271, Defendants also contribute to and/or induce infringement of the Product Wrapping Machine Patent, the Patent Rights and the Technology Rights.

38. Upon information and belief, Defendants have willfully infringed the Product Wrapping Machine Patent, the Patent Rights and the Technology Rights.

39. Upon information and belief, Defendants acts of infringement of the Product Wrapping Machine Patent, as well as the Patent Rights and the Technology Rights related thereto, will continue after service of this Complaint.

40. As a result of Defendants' infringement, Debtor/Plaintiff has suffered and will continue to suffer damages.

41. Debtor/Plaintiff is entitled to recover from Defendants the damages sustained by it as a result of Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

42. Debtor/Plaintiff re-alleges paragraphs 1-31 as though fully set forth herein.

43. Whetten and the Defendants were fully aware of the existence of the Lease prior to their acquisition of the assets of Simply Goodies.

44. Defendants, not including Dulces Blueberry, have willfully and intentionally interfered with the Lease which exists between Debtor/Plaintiff and Dulces Blueberry.

45. The acts of the Defendants are the cause of the damages and continuing damages suffered by the Debtor/Plaintiff.

## COUNT FOUR
## ATTORNEY'S FEES

46. Debtor/Plaintiff re-alleges paragraphs 1-31 as though fully set forth herein.

47. Defendants' conduct as described in this complaint and the resulting damage and loss to Debtor/Plaintiff has necessitated Debtor/Plaintiff to employ the undersigned firm of attorneys to file suit. Debtor/Plaintiff seeks reasonable attorneys' fees and costs of court incurred in bringing this suit.

## PRAYER FOR RELIEF

A. That Defendants be cited to appear and answer herein;

B. That Elamex be required to turn over the $25,000 for attorney's fees as agreed to in 2008;

C. That Defendants be required to turnover the control and possession of the Property to Debtor/Plaintiffs;

D. That Defendants be required to turnover all past due Lease obligations starting the date they took possession and control of the Property and/or the Lessee (Dulces Blueberry).

E. That Defendants turnover all future Lease obligations to include no less than the full cost of insurance, taxes, and the full amount of rent directly to the Debtor/Plaintiff;

F. In the alternative to "E" above, for all future Lease obligations due Debtor/Plaintiff, that Defendant Mount Franklin be ordered to redirect the Lease obligations to be paid directly to Debtor/Plaintiff instead of Mount Franklin paying the rent component to its affiliate Confecciones de Juarez;

G. That Defendants be found to have infringed the Product Wrapping Machine Patent, the Patent Rights and the Technology Rights;

H. That Defendants' infringement of the Product Wrapping Machine Patent, the Patent Rights and the Technology Rights to be found to have been willful;

I. That Defendants be ordered to pay damages adequate to compensate Debtor/Plaintiff for Defendants' infringement of the Product Wrapping Machine Patent, the Patent Rights and the Technology Rights pursuant to 35 U.S.C. § 284, including an accounting;

J. That Defendants be ordered to pay treble damages pursuant to 35 U.S.C. § 284;

K. That Defendants be ordered to pay Debtor/Plaintiff's attorney's fees pursuant to 35 U.S.C. § 285;

L. That Debtor/Plaintiff be granted exemplary damages;

M. That Debtor/Plaintiff be granted judgment in the amount of all damages;

N. That Debtor/Plaintiff be granted judgment for reasonable attorney's fees and costs incurred in bringing this suit;

O. That Debtor/Plaintiff be granted pre-judgment interest at the highest rate permitted by law on the total amount of the judgment;

P. That Debtor/Plaintiff be granted post-judgment interest at the highest rate permitted by law on the total amount of the judgment until paid;

Q. That Debtor/Plaintiff be granted judgment for all costs of court and for such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled; and

R. Alternatively, if relief is denied or is unrecoverable for whatever reason, with the exception of equipment which the Court in Mexico has granted the Debtor/Plaintiff a judicial lien on, Defendant Casas Grandes Confections be ordered to immediately remove the equipment it claims it owns from the Property to allow Debtor/Plaintiff the opportunity to locate another lessee who can and will pay their obligations.

If this alternative is chosen, Debtor/Plaintiff prays that the Court will also order a bond or other surety to protect Debtor/Plaintiff from damages that will surely be caused to the Property by the removal of said hundreds of pieces of equipment, many very large and unwieldy with physical attachments to the Property.

S. For all such other relief as Debtor/Plaintiff deserves in the circumstances, whether general, or special at law or equity.

Respectfully submitted,

**PIERCE & LITTLE, P.C.**
221 N. Kansas, Suite 1301
El Paso, Texas 79901
Telephone: (915) 351-9772
Facsimile: (915) 351-9976

By: /s/ David Pierce
**DAVID PIERCE**
State Bar No. 15992700
**ROBERT L. EDWARDS**
State Bar No. 24058290
**HUGO MADRID**
State Bar No. 24060209
Attorneys for Debtor/Plaintiff